UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
DIANE G. STRUCEK, on behalf of
EDWARD P. STRUCEK, deceased

                Plaintiff,

- v. -

MICHAEL J. ASTRUE, Commissioner of
Social Security

                Defendant.
----------------------------------------------------------x

OPINION AND ORDER

No. 08-cv-02261 (NG)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 10 2014 ★
BROOKLYN OFFICE

GERSHON, United States District Judge:

Plaintiff Edward P. Strucek[1] brought this action seeking reversal of the final decision of Michael J. Astrue, the Commissioner of Social Security (the "Commissioner"), denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. After a hearing at which plaintiff appeared with his attorney, Administrative Law Judge Katherine Edgell (the "ALJ") found that Strucek had the residual functional capacity to perform the duties of his past job as a security director and fire safety inspector for a hotel and thus was not disabled within the meaning of the Act. That decision became final on April 16, 2008, when the Appeals Council denied plaintiff's request for review. Plaintiff then timely commenced this action, and both parties moved for judgment on the pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure.

Strucek was born in 1956 and finished high school. From 1975 to 1993, he worked as a security director and fire safety inspector at the Hotel Pierre in Manhattan. He left that job

---

[1] Edward P. Strucek died while this action was pending. His widow, Diane G. Strucek, was substituted as plaintiff in accordance with Rule 25(a)(1) of the Federal Rules of Civil Procedure. (*See* Dkt. 24.)

because he felt that "there was no room for advancement" and he "wanted a change." (R. 354.) From 1994 until December 2003, he worked as a concrete laborer in the construction industry. In this job, he frequently used a jackhammer on road repair projects. He first complained of left shoulder, elbow, and hand pain to his internist, Dr. Shirishbhai Patel, in August 2003, and reported worsening symptoms, including increased paresthesias on the left side, in December 2003. When the project on which he was working came to an end later that month, Strucek was laid off. With the exception of a temporary work assignment in 2004, which the ALJ found to be an unsuccessful work attempt, he did not engage in any subsequent employment after December 2003.

Strucek filed for disability benefits on January 12, 2005, asserting that, as of December 23, 2003, he was unable to engage in any substantial gainful activity on account of carpal tunnel syndrome, inability to move his left shoulder, pain in his left arm and fingers, and low back syndrome. Employing the five-step sequential evaluation process for determining whether a claimant is entitled to benefits set forth in 20 C.F.R. § 404.1520(a)(4), the ALJ found, at step one, that Strucek was not engaged in substantial gainful activity; at step two, that his lumbar, left shoulder, and bilateral hand conditions qualified as severe medically determinable impairments; and, at step three, that Strucek's impairments did not meet or medically equal one of the listed impairments in the federal regulations. As a result, at step four, the ALJ assessed whether, despite these impairments, Strucek possessed the residual functional capacity to perform his past relevant work. *See Cichocki v. Astrue*, 729 F.3d 172, 175 (2d Cir. 2013). The ALJ first determined that Strucek had the residual functional capacity to lift light objects; sit, stand, and walk throughout the workday; but that he could not perform more than occasional reaching or handling, and could not perform any work that required overhead reaching. Given her conclusion

that Strucek's past relevant work as a security director and fire inspector for a hotel did not require the performance of any activities precluded by Strucek's residual functional capacity, the ALJ found that Strucek was capable of performing his past relevant work and was therefore not disabled.

## I. APPLICABLE LAW

A claimant is entitled to disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant has both "the general burden of proving that he or she has a disability within the meaning of the Act" and the specific "burden of proving his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citation omitted).

In reviewing a denial of disability benefits, "[a] district court may set aside the Commissioner's determination . . . only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Burgess*, 537 F.3d at 127 (quotation marks omitted). In other words, the reviewing court must determine whether the ALJ's decision relied on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and applied the "correct legal standards." *Id.* (quotation marks omitted).

## II. DISCUSSION

Strucek argues that the ALJ's decision must be reversed on the grounds that: (1) the ALJ failed to give controlling weight to the reports of Strucek's treating physicians; (2) the ALJ improperly assessed Strucek's credibility; (3) the ALJ erred by failing to engage in a function-by-function assessment of Strucek's limitations as part of the residual functional capacity

analysis; and (4) the ALJ failed to properly evaluate plaintiff's capacity to perform his past relevant work.

A. **Treating Physician Rule**

Strucek first contends that the ALJ erred by failing to give controlling weight to the November 2, 2006 statement of his treating physician, Dr. Cheri Durden, regarding his ability to lift and carry weight and use his arms. A treating physician's opinion is entitled to "controlling weight," provided that it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *see also Burgess*, 537 F.3d at 128.

Strucek argues that the ALJ improperly disregarded Dr. Durden's opinion that he could only occasionally lift and carry up to 10 pounds. As plaintiff concedes, however, the ALJ largely credited Dr. Durden's medical opinion. (*See* Opp. at 12.) As relevant here, the ALJ acknowledged that "heavy lifting is precluded by [Strucek's] underlying lumbar and left shoulder impairments together with his bilateral carpal tunnel syndrome." (R. 19.) Relying on plaintiff's own testimony, the ALJ nevertheless found that Strucek "remained able to lift lighter objects, such as those weighing ten to twenty pounds." (*Id.*) The only dispute identified by plaintiff thus concerns whether Strucek could lift objects weighing between 10 and 20 pounds.

This limited dispute is immaterial to the ALJ's denial of disability benefits. The ALJ found that Strucek was not entitled to disability benefits because he retained the residual functional capacity to perform his past relevant work as a hotel security and fire safety director. By Strucek's own admission, that job did not involve any lifting. Accordingly, even if plaintiff

could only occasionally lift objects weighing up to 10 pounds, as Dr. Durden opined, plaintiff still would have been able to perform his past relevant work.[2]

Plaintiff's contention that the ALJ rejected Dr. Durden's findings regarding his ability to use his arms or perform fine manipulations with his hands is belied by the record. Dr. Durden opined that Strucek had difficulty raising his left arm above shoulder level to perform significant activity, such as shampooing his hair or reaching, and could only occasionally perform fine manipulations with his right hand. The ALJ credited these findings. The ALJ determined that, "as a result of the left shoulder impingement the claimant is unable to perform activities that involve frequent reaching or overhead work activities," and that, "due to his bilateral carpal tunnel syndrome, [Strucek] is also unable to perform work requiring frequent handling or fine manipulation." (R. 19-20.)

Strucek next argues that the ALJ had an obligation to fully develop the record by recontacting Dr. Durden and his other treating physicians to clarify any perceived conflicts between their medical opinions and plaintiff's own testimony. Because a disability benefits hearing is a non-adversarial proceeding, "an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted). For this reason, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Id.* "[T]he flip-side of this same proposition," however, is that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a

---

[2] For the same reason, Strucek's argument that the ALJ improperly credited the findings of Dr. Alangir Isani, a non-treating physician, regarding the amount of weight Strucek could lift, is also immaterial.

'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Id.* at 79 n. 5.

Strucek does not point to any "obvious gaps" in the medical record. To the contrary, the 360-page record is replete with medical records detailing his impairments and the course of his treatment, including his treatment for low back syndrome. Nor does plaintiff identify any material conflicts between Dr. Durden's November 2006 statement and the ALJ's assessment of Strucek's residual functional capacity. Because the evidence already in the record was "adequate for [her] to make a determination as to disability," the ALJ was not under a duty to further develop the record by seeking additional medical records. *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996).

## B.     Credibility Determination

Strucek argues that the ALJ erred in determining that his testimony regarding the intensity, persistence, and limiting effects of his symptoms was not fully credible.

In determining a claimant's residual functional capacity, "the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). If the claimant's statements about his symptoms are not substantiated by objective medical evidence, "the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F.App'x 179, 183 (2d Cir. 2010). To properly evaluate the claimant's credibility, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record," and clearly indicate "the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (quoting SSR 96-7p, 1996 WL 374186, at *2). "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility," her decision to

discredit a claimant's subjective testimony is "entitled to deference" and may not be disturbed if it is supported by substantial evidence. *Brown v. Astrue*, No. CV-08-3653, 2010 WL 2606477, at *6 (E.D.N.Y. June 22, 2010).

Here, the ALJ found that Strucek's left shoulder, lumbar, and bilateral hand impairments imposed more than minimal limitations on his ability to perform basic work-related functions. The ALJ, however, also found that Strucek's subjective complaints were "not credible to the incapacitating extent alleged." (R. 18.) These complaints included testimony that he lacked manual dexterity, dropped objects, had poor circulation, suffered from lower back pain, and that his pain medication caused shortness of breath, cramps in his hands and legs, and insomnia. In the ALJ's estimation, the evidence in the record "tend[ed] to suggest the claimant has a lesser degree of symptoms and a higher level of functioning than asserted." (*Id.*)

The ALJ gave specific reasons for her credibility determination, which was supported by substantial evidence in the record. The ALJ noted, for example, that the carpal tunnel release surgery on plaintiff's left hand had been successful, resulting in a substantial reduction in numbness and pain. The success of this surgery is particularly significant because Strucek was left hand dominant. Moreover, although Strucek's right hand continued to exhibit weakness and paresthesias, both Dr. Durden (a treating source) and Dr. Isani (a consulting physician) found that he had a full range of hand and finger motion, with no signs of thenar atrophy, and that his right hand retained the ability to handle, finger, and feel at least on an occasional basis. Regarding his shoulder impairment, the ALJ observed that, on examination by his treating physician, plaintiff only experienced left shoulder pain at extreme ranges of motion. The ALJ also examined the medical reports regarding plaintiff's low back syndrome, and noted what they contained and what they did not; in particular, there was no indication of any disc herniation,

spinal cord compression, or nerve root involvement, and none of the medical reports indicated that claimant had developed gait abnormalities, muscle spasms, or other serious identifiable symptoms. Moreover, contrary to plaintiff's testimony regarding the debilitating extent of his back pain, Dr. Durden's medical source statement, on which plaintiff principally relies, indicates that he had no limitations in standing, sitting, or walking throughout the workday.

In deciding to partially discredit plaintiff's testimony regarding the extent of his impairments, the ALJ also relied on plaintiff's own account of his daily activities. In particular, the ALJ noted that Strucek remained able to drive his car from Queens to New Jersey, which required him to grasp the steering wheel for up to an hour and a half each way, stopping once at a rest stop on the way. Strucek was also able to do light shopping, which required him to carry 10 to 15 pounds for four blocks, although he needed to switch the plastic bags from hand to hand several times. Moreover, the record indicates that Strucek maintained a robust exercise regime in an attempt to lose weight; he was able to walk up and down three to five flights of stairs ten times, taking a short break between each set, for a total of 30 to 50 flights of stairs. This degree of activity belies his contention that debilitating back pain, leg cramps, and shortness of breath prevented him from doing even light work.

In sum, the ALJ provided specific reasons for her credibility determination, including the success of the carpal tunnel release surgery and plaintiff's testimony regarding his daily activities. These findings provide substantial evidence to support the ALJ's assessment of plaintiff's credibility.

### C. Function-by-Function Analysis

Strucek's contention that the ALJ failed to provide a function-by-function analysis of the plaintiff's ability to engage in work activities also is belied by the record. The ALJ observed that Strucek "retain[ed] the ability to sit, stand and walk throughout the eight hour workday." (R. 19;

*see also id.* at 329-30 (conclusions of treating physician that standing, walking, and sitting were not affected by Strucek's impairments).) The ALJ also observed that Strucek could not do any heavy lifting, but remained able to lift lighter objects; could not perform activities involving frequent reaching or overhead work activities with his left arm; and, as a result of his bilateral carpal tunnel syndrome, could not perform work requiring frequent handling or fine manipulation. As discussed above, with the sole exception of the lifting restriction, this functional analysis is entirely consistent with the functional analysis prepared by Dr. Durden. Although the ALJ's decision did not discuss every possible functional limitation, the decision discussed the limitations relevant to Strucek's past work and was supported by substantial evidence. Nothing more is required. *See Cichocki*, 729 F.3d at 178 (ALJ must "address all relevant [functional] limitations," but is not required to engage in "an explicit function-by-function analysis of all possible limitations").

### D. Capacity to Perform Past Relevant Work

Substantial evidence supports the ALJ's determination that Strucek was capable of performing his past work as a hotel fire safety inspector and security director. As plaintiff described his prior job, he worked as a supervisor in the security department of the Hotel Pierre, where he "was responsible for the safety of persons and property" at the hotel. (R. 62.) His work required him to stand for 60% of the day and sit for 40% of day. During this time, he had to lock and unlock apartments, turn the alarm systems on and off, take reports from hotel tenants or guests who reported missing or stolen items, file these reports with the police, and stand in the lobby monitoring the elevator. The job did not require any lifting. The exertional demands of this job are entirely consistent with Strucek's residual functional capacity, which contained no

limitations for standing, walking, or sitting, and allowed Strucek to engage in handling, fingering, and feeling "occasionally," meaning up to one-third of the workday.[3]

Strucek objects that the ALJ failed to sufficiently develop the record regarding the extent that his past relevant work required him to use his hands. Consistent with her affirmative obligation to develop the record, the ALJ asked open-ended questions and gave plaintiff the opportunity to describe the exertional and nonexertional demands of his position as a security director and fire safety inspector. Strucek explained that one of the requirements of his job was to take theft and missing property reports on one-page standard forms. Plaintiff's counsel, who represented him at the hearing, did not ask Strucek to amplify this testimony, which was uniquely within Strucek's knowledge. Moreover, the medical evidence on which the ALJ relied indicates that carpal tunnel surgery on Strucek's left (writing) hand significantly improved his symptoms of pain and numbness. Because this record evidence was sufficient to permit the ALJ to conclude that Strucek was capable of occasionally completing these one-page handwritten forms, there is no merit to Strucek's claim that the ALJ was obligated to further develop the record. *See Lamond v. Astrue*, 440 Fed. App'x 17, 22 (2d Cir. 2011).

Strucek also objects that the ALJ failed to consider whether the exertional and nonexertional limitations for reaching, handling, fingering, feeling, and environmental exposure noted by Dr. Durden caused a "significant erosion of [plaintiff's] occupational base." (Opp. at 10.) The term "occupational base" refers to the approximate number of occupations that an individual has the ability to perform, considering all exertional and nonexertional limitations. SSR 96-7p, 1996 WL 374186, at *3. This concept, however, is only applicable at step five of the

---

[3] The medical source statement completed by Dr. Durden defines the term "occasionally" to mean "occurring from very little up to one-third of an 8–hour workday (cumulative, not continuous)." (R. 329; *see also* SSR 96-7p, 1996 WL 374186, at *3 (same).)

sequential evaluation process, where the Commissioner has the burden of showing that "there is other gainful work in the national economy [which] the claimant could perform." *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (quotations marks omitted) (alteration in original). Here, because the ALJ found at step four that Strucek could perform his past relevant work—which did not require more than occasional reaching, handling, fingering, feeling, or exposure to environmental extremes—there was no need to consider, at step five, whether Strucek's nonexertional limitations eroded the potential number of occupations he could perform.

Similarly, an ALJ is not required to consult a vocational expert to assess whether a claimant's combined exertional and nonexertional limitations prevent him from performing his past relevant work. At step four of the five-step analysis, "the claimant has the burden to show an inability to return to h[is] previous specific job." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003). While an expert "is often called upon to explain the requirements of particular jobs, step four of the analysis does not actually *require* that an ALJ consult an expert." *Petrie v. Astrue*, 412 F. App'x 401, 409 (2d Cir. 2011) (internal quotation marks and citation omitted) (emphasis in original).[4] The ALJ therefore did not err in not consulting a vocational expert.

---

[4] The regulations cited by Strucek—20 C.F.R. § 416.969a(d) and SSR 83-14—are inapposite, as they concern when an ALJ should use a vocational expert at step five of the analysis. *See Calabrese v. Astrue*, 358 F. App'x 274, 275-76 (2d Cir. 2009).

## III. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is GRANTED, and plaintiff's motion for judgment on the pleadings is DENIED. The Clerk of Court is directed to enter judgment in favor of the defendant.

SO ORDERED.

s/Nina Gershon
_____
NINA GERSHON
United States District Judge

Dated: March 7, 2014
Brooklyn, New York